361 N.E.2d 174 (1977)
ALLIED FIDELITY INSURANCE COMPANY, Defendant-Appellant,
v.
Randy LAMB, Plaintiff-Appellee.
No. 1-1176A218.
Court of Appeals of Indiana, First District.
March 31, 1977.
*175 Charles F. Robinson, Jr., John W. Hammel, Linda Y. Hammel, Yarling, Tunnel, Robinson & Lamb, Indianapolis, John R. *176 Kenley, McFaddin & McFaddin, Rockville, for defendant-appellant.
Wallace, Campbell, Bunch & Shamback, Covington, Clelland J. Hanner, Rockville, for plaintiff-appellee.
ROBERTSON, Chief Judge.
This is an appeal from a judgment of the Parke County Circuit Court entered against defendant-appellant, Allied Fidelity Insurance Company (Allied), in an action by plaintiff-appellee, Randy Lamb, seeking recovery under the uninsured motorist provision of an automobile insurance policy issued by Allied.
The facts concerning the accident from which this claim arose are virtually undisputed. On May 24, 1974, at approximately 11:30 A.M., Peggy Simmons, accompanied by her cousin, Wanda Lamb and Mrs. Lamb's twin ten-month old daughters, Rebecca and Jennifer, was driving her parents' 1965 Buick Wildcat in a northerly direction on Highway 63 in Vermillion County, Indiana. While proceeding along Highway 63, the Simmons automobile passed an unidentified semi-trailer truck traveling in the southbound lane. As the car and truck passed, a rock crashed through the car's windshield striking Rebecca Lamb in the head. Rebecca subsequently died from the head injuries inflicted by the rock. The southbound truck, its driver apparently unaware of the accident, did not stop. Neither the truck nor its driver had been identified or located since the accident.
At the time of the accident, the Simmons automobile was covered under an insurance policy issued by Allied. Randy Lamb, Rebecca's father, initiated this suit on July 31, 1974, to recover under the policy's hit-and-run automobile coverage provided in the uninsured motorist clause, the pertinent terms of which are as follows:
"Coverage 1  Family Protection Damages for Bodily Injury: To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom hereinafter called `bodily injury', sustained by the insured, caused by accident and arising out of the ownership maintenance or use of such uninsured motor vehicle provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration."
* * * * * *
"Definitions:
"`insured' means:
(a) the named insured and any relative;
(b) any other person while occupying an insured automobile; and
(c) any person with respect to damages he is entitled to recover because of bodily injury to which this part applies sustained by an insured under (a) or (b) above.
"`uninsured motor vehicle' includes a trailer of any type and means:
* * * * * *
"(b) a hit-and-run automobile
* * * * * *
"`hit-and-run automobile' means an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident, provided (a) there cannot be ascertained the identity of either the operator or the owner of such `hit-and-run automobile', (b) the insured or someone on his behalf shall have reported the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles, and shall have filed with the company within 30 days thereafter a statement under oath that the insured or his legal representative has a cause or causes of action arising out of such accident for *177 damages against a person or persons whose identity is unascertainable and setting forth the facts in support thereof and (c) at the company's request the insured or his legal representative makes available for inspection the automobile which the insured was occupying at the time of the accident" (Our emphasis).
Trial by jury commenced on May 18, 1976, and a verdict was returned against Allied in the amount of $15,000.00. Judgment was entered accordingly, and, thereafter, Allied perfected this appeal.
Allied contends that the judgment of the trial court is contrary to law in that the trial court erroneously concluded that Lamb was entitled to recover under the uninsured motorist clause of the Simmons policy. Allied maintains that it is entitled to judgment as a matter of law because: (1) the claimant, Lamb, failed to show the occurrence of "physical contact"; and (2) the evidence is insufficient to show that Lamb was legally entitled to recover damages from the operator/owner of the hit-and-run automobile.
The uninsured motorist provision in the policy we are asked to construe defines hit-and-run automobile to be "an automobile which causes bodily injury to an insured arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying... ."[1]
In cases involving hit-and-run automobiles, this Court has determined that the occurrence of some type of "physical contact" between the hit-and-run automobile, and the insured automobile is a condition precedent to recovery under a policy's uninsured motorist clause. Blankenbaker v. Great Central Ins. Co. (1972), 151 Ind. App. 693, 281 N.E.2d 496; Ely v. State Farm Mutual Automobile Ins. Co. (1971), 148 Ind. App. 586, 268 N.E.2d 316. We have also determined that the total absence of "physical contact" is fatal to recovery. Ely, supra. Thus, the question posed is whether the "physical contact" condition has been satisfied in the case at bar. If it has not, we must necessarily conclude that Allied is entitled to judgment as a matter of law.
The evidence presented clearly shows that the accident and resulting injuries were proximately caused by the propulsion of a rock through the automobile's windshield and not by a direct physical touching between the unidentified truck and the insured automobile. Allied asserts that the facts do not satisfy the "physical contact" condition because "physical contact", in its literal contractual meaning, contemplates a direct physical touching. Lamb, on the other hand, suggests that proper interpretation of the term "physical contact" does not require direct physical touching, but is sufficiently satisfied by indirect physical contact.
Neither party contends that a direct physical touching between the hit-and-run automobile and the insured automobile occurred. Therefore, the existence of "physical contact" depends upon our determination as to whether a continued transmission of force indirectly and contemporaneously through an intermediate object satisfies the condition.
Lamb relies upon a line of cases, espousing the indirect physical contact doctrine, in which the "physical contact" condition was found to be satisfied when objects propelled by hit-and-run automobiles struck insured automobiles. Johnson v. State Farm Mutual Automobile Ins. Co. (1967), 70 Wash.2d 587, 424 P.2d 648; Barfield v. Insurance Co. of North America (1968), 59 Tenn. App. 631, 443 S.W.2d 482; Inter-Insurance Exchange of the Automobile Club *178 of Southern California v. Lopez (1965), 238 Cal. App.2d 441, 47 Cal. Rptr. 834. An analysis of these cases, and others, allowing recovery upon a showing of indirect physical contact reveals that indirect physical contact is considered to be sufficient where: (1) the possibilities of fraud appear to be slight[2] and, (2) a causal connection between the hit-and-run automobile and the intermediate object exists.
This Court considered the applicability of the indirect physical contact doctrine in Blankenbaker v. Great Central Ins. Co., supra. In Blankenbaker, the insured sought recovery under the hit-and-run provision of his policy's uninsured motorist clause following an accident in which his automobile struck a tire and rim assembly lying on the highway. There was no explanation in Blankenbaker regarding where the tire and rim assembly came from, how it got there, or what happened to it after the accident. The possibilities of fraud under these circumstances were readily apparent. Judge Buchanan, finding no physical contact, stated that:
"In the case before us, no other vehicle was shown to be within the area of the accident. There was a total lack of evidence tending to establish a causal connection between some vehicle and this tire and rim assembly. The assembly was not shown to be a part of a hit-and-run automobile, which is essential to invoking the indirect physical contact doctrine. Consequently, there was no physical contact direct or indirect, with a hit-and-run `automobile'. (Citation omitted). (Original emphasis).
"Even if it is assumed that the tire and rim assembly had momentarily come to rest after falling off an ongoing vehicle, contact by the camper-bus with it is too remote and disconnected to constitute contact with an `automobile'. We reject the indirect physical contact doctrine. To accept it is to rewrite the contract between the parties." (Our emphasis). Blankenbaker, supra at 702-703, 281 N.E.2d at 501-502.
Allied maintains that our rejection of the indirect physical doctrine in Blankenbaker is dispositive of the issue presented here. We disagree with this analysis. We are of the opinion that Blankenbaker should not be construed to be a blanket rejection of the indirect physical contact doctrine, but should be limited to the facts therein.
Blankenbaker is factually distinguishable from the case at bar. Here, a causal connection is established between the hit-and-run automobile and the intermediate propelled object. Here, the possibilities of fraud are remote. Here, there exists objective evidence from which the trier of fact[3] could reasonably conclude that the unidentified vehicle was the original transmitter of the force causing the accident.
We are of the opinion that there need not be a direct physical touching between the hit-and-run automobile and the insured automobile in all instances before the "physical contact" condition is satisfied. If a substantial physical nexus between the hit-and-run vehicle and the intermediate object is shown and if the transmitted force is continuous and contemporaneous, as when one object hits a second impelling it to strike a third, we believe that "physical contact", within the policy's meaning, exists.
Allied contends that such an interpretation rewrites the clear and unambiguous language of the insurance contract. This Court need not be reminded that it may not rewrite the clear and unambiguous language of a contract. Ely v. State Farm Mutual Automobile Ins. Co., supra; Taylor *179 v. American Underwriters, Inc. supra. However, we do not believe that the term "physical contact" is so plain and clear that its meaning may not be enlarged or contracted in appropriate occasions to prevent unjust and absurd results. That the term "physical contact" as employed in insurance policies is subject to only one interpretation is clearly an unreasonable contention considering the divergent conclusions which have been reached by the courts. We feel that the reasoning applied by the Washington Supreme Court to answer a similar contention is appropriate here:
"Had appellant intended the provision to apply only where there is actual and immediate, as opposed to indirect physical contact between the hit-and-run vehicle and the vehicle of the insured, it should have so provided in unmistakably clear language...." Johnson v. State Farm Mutual Automobile Ins. Co. (1967), 70 Wash.2d 587 and 590, 424 P.2d 648 at 650.
We hold that "physical contact" within the meaning of the hit-and-run provision of uninsured motorist coverage occurs when an unidentified vehicle strikes an object impelling it to strike the insured automobile and a substantial physical nexus between the unidentified vehicle and the intermediate object is established. Hypothetical situations in which indirect physical contact could possibly satisfy the condition are when: the unidentified automobile strikes another automobile propelling it into the insured's automobile; the unidentified automobile strikes a telephone pole causing it to strike the insured's automobile.
Our holding should not be interpreted as allowing all types of indirect physical contact to satisfy the policy condition. We have not attempted to make a blanket acceptance of the doctrine. Situations will undoubtedly arise in which indirect physical contact will not be sufficient. The Blankenbaker case is illustrative of a situation in which the indirect physical contact doctrine fails because of temporal and causal remoteness. Neither is our holding to be interpreted as a derogation of the requirement of some type of physical contact. Recovery should not be granted under an uninsured motorist provision requiring physical contact in hit-and-run accidents where the claimant is unable to show the existence of any type of physical contact. If we were to completely discard the requirement of physical contact, the doors to fraud and collusion would be opened wide.
Having determined that the indirect physical contact present here sufficiently satisfies the "physical contact" condition, we now must decide whether Lamb was legally entitled to recover.
The uninsured motorist clause of the policy in question provides, in accordance with our uninsured motorist statute,[4] coverage to the insured for injuries sustained in accidents involving uninsured motor vehicles. Under the terms of the policy's uninsured motorist coverage, Allied became obligated to pay only those sums to which the insured was "legally entitled to recover as damages" from the operator of the uninsured motor vehicle. Since the policy defines a hit-and-run automobile to be an uninsured motor vehicle, it is apparent that in order for Lamb to recover from Allied under the policy's uninsured motorist clause, he must first be "legally entitled" to recover damages from the operator of the hit-and-run uninsured motor vehicle.
The term "legally entitled to recover", as employed in uninsured motorist statutes and policy clauses, has been interpreted by other jurisdictions to mean that the insured, to recover against the insurer, must support his claim by proving those facts which he would have to establish had he proceeded directly against the uninsured motorist. See: e.g. Winner v. Ratzlaff (1973), 211 Kan. 59, 505 P.2d 606; Hightower v. Members Mutual Ins. Co. (1973 Tex. Civ.App.) 494 S.W.2d 285; De Luca v. Motor Vehicle Accident Indemnification Corp. (1966), 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482. This interpretation denotes *180 that the insured must prove those facts essential to show fault (the uninsured motorist's negligence), and damages. While our research has discovered no Indiana decisions interpreting the phrase "legally entitled to recover", we see no reason why this Court should not adopt the persuasive reasoning used by other states in interpreting the phrase. It is clear to us that the words "legally entitled to recover" simply mean that the insured may recover from an insurer under an uninsured motorist clause only after establishing that the uninsured motorist is at fault. Thus, Lamb was charged with the burden of proving that the operator of the hit-and-run truck was negligent. Whether the evidence adduced at trial was sufficient to support the requisite elements of negligence is the question which we now must decide.
Allied contends that the trial court erred in overruling its motion for judgment on the evidence made at the close of the plaintiff's case. Allied argues that the evidence presented by Lamb was legally insufficient to support a prima facie case of negligence against the operator of the hit-and-run truck and that, therefore, the trial court erred as a matter of law in submitting the case to the jury. We agree with the argument advanced by Allied and find that the trial court erred in overruling Allied's motion for judgment on the evidence.
Our Supreme Court stated in Miller v. Griesel (1974), 261 Ind. 604, 308 N.E.2d 701 at 706, that:
"In Indiana the tort of negligence is comprised of three elements: (1) a duty on the part of the defendant in relation to the plaintiff; (2) failure on the part of defendant to conform its conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff resulting from that failure." (Citations omitted).
In Miller, supra, the Court further set forth three questions of law concerning these elements to be decided by the trial court before a negligence case may be submitted to the jury. The questions of law to be decided by the trial court are:
(1) Does the law recognize any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff?
(2) What standard of care will the courts impose on this relationship once a duty is recognized?
(3) Is the evidence introduced by the plaintiff at trial sufficient as a matter of law to enable the jury to find that the plaintiff has established the elements of the cause of action?
In determining whether a duty is owed by a particular party, the nature of the relationship must be analyzed. The relationship between the parties here is one of a passenger in an automobile and an operator of another motor vehicle using a common highway simultaneously. The specific and initial question of law is whether the operator of a motor vehicle owes a duty to other users of a highway to avoid causing injuries. The answer to this question must be in the affirmative. This State imposes a general duty upon all operators of motor vehicles to use ordinary care to avoid injuries to other motorists. Chase v. Settles (1971), 148 Ind. App. 259, 265 N.E.2d 57. We find, therefore, that the driver of the truck had a duty to exercise reasonable care in the operation of his truck for the safety of others using the highway upon which he traveled.
Once a duty is recognized, the trial court must determine as a matter of law what standard of care will be imposed upon the relationship. The normal standard of care imposed upon an individual's actions is whether he exercised his duty with the level of care that an ordinary and prudent man would under the same circumstances. Miller v. Griesel, supra. In essence then, the driver of the hit-and-run truck had a duty to exercise ordinary and reasonable care to avoid causing injuries to other motorists on the highway. We find no fault in the trial court's answer to the first two questions of law.
*181 The third question of law concerns the sufficiency of the plaintiff's evidence to establish the elements of negligence. The rule in Indiana is that a trial court may not grant a defendant's motion for a directed verdict at the close of the plaintiff's case unless there is a total absence of evidence or reasonable inference therefrom on at least one essential element of the cause of action, here negligence. Mamula v. Ford Motor Co. (1971), 150 Ind. App. 179, 275 N.E.2d 849. Thus, judgment on the evidence is proper only when the evidence is without conflict and is susceptible of but one inference in favor of the moving party. Mamula, supra.
The facts, as presented by Lamb, reveal that the driver of the uninsured vehicle was traveling within the speed limit at the time of the unfortunate accident. No testimony was elicited showing that the driver of the truck was reckless in any way. There is no indication that the driver saw the rock or should have seen the rock. In fact, the only evidence connecting the truck with the rock was Peggy Simmons' statement that the rock appeared to have to come from beneath the truck as the truck passed the Simmons' automobile.
We are of the opinion that Lamb's evidence is sufficient to justify an inference that the rock was propelled by the passing truck. However, this fact, in and of itself, does not constitute actionable negligence. Lamb was required to establish that the driver of the truck failed to conform his conduct to that level of care which the ordinary and prudent person would have exercised under the circumstances and that this failure proximately caused the injuries to Rebecca Lamb.
We are aware that generally the questions of whether a defendant breached his duty and whether such breach proximately caused the injuries are to be determined by the trier of fact. However, where the facts are undisputed and lend themselves to a single inference or conclusion, the issues presented thereby become questions of law for the trial court to decide. Petroski v. Northern Indiana Public Service Co. (1976), Ind. App., 354 N.E.2d 736. In the case at bar, there is no evidence indicating that the driver of the truck failed to conform his conduct to the standard of care imposed upon him by the relationship. Furthermore, there is no indication that the driver could have or should have reasonably anticipated or forseen that such an accident would happen under the circumstances. In essence, there is absolutely no proof in this case that the driver acted negligently or that his actions, if negligent, proximately caused the injuries. We must find that there was a total absence of evidence on two essential elements of negligence, namely breach and proximate cause. Thus, the evidence was insufficient to take the case to the jury, and the trial court should have granted Allied's motion for judgment on the evidence.
Accordingly, the trial court's judgment is reversed and this cause is hereby remanded with instructions to enter judgment in favor of the defendant.
Reversed and remanded.
LOWDERMILK and LYBROOK, JJ., concur.
NOTES
[1] Hit-and-run clauses provide additional coverage to the insured and are not in violation of our uninsured motorist statute, IC 1971, 27-7-5-1 (Burns Code Ed.). Taylor v. American Underwriters, Inc. (1976), Ind. App., 352 N.E.2d 86; Ely v. State Farm Mutual Automobile Ins. Co. (1971), 148 Ind. App. 586, 268 N.E.2d 316. The "physical contact" requirements found in such policies are proper limitations upon the broader coverage provided by insurers. Taylor, supra. Being additional coverage not required by the statute, hit-and-run provisions are products of contractual bargaining and are to be construed accordingly. Taylor, supra; Ely, supra.
[2] The general reason for requiring a showing of "physical contact" in actions seeking recovery for hit-and-run accidents is to prevent fraudulent claims. See: Ely v. State Farm Mutual Automobile Ins. Co. supra; A. Widiss, A Guide to Uninsured Motorist Coverage § 2.41 (1969).
[3] The trier of fact ultimately decides whether "physical contact" did, in fact, occur. Buehrer v. Indiana Insurance Company (1970), 146 Ind. App. 438, 256 N.E.2d 414. However, the type of "physical contact", direct or indirect, required to satisfy the condition is a question of law.
[4] IC 1971, 27-7-5-1 (Burns Code Ed.).