Kimberly C. ACKLES, Special Administrator of the Estate of James L. Porter, Deceased, Appellant–Plaintiff,

v.

HARTFORD UNDERWRITERS
INSURANCE CORPORATION,
Appellee–Defendant.

No. 48A02–9712–CV–833.

Court of Appeals of Indiana.

Sept. 21, 1998.

Linda Y. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, for Appellant–Plaintiff.

Susan R. Hanson, Joseph J. Jensen, Tuesely & Hall, South Bend, for Appellee–Defendant.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

On April 26, 1996, Kimberly C. Ackles ("Ackles"), Special Administrator of the Estate of James L. Porter ("Porter"), deceased, initiated a lawsuit against Hartford Underwriters Insurance Corporation ("Hartford"), seeking uninsured motorist coverage for a fatal accident involving Porter and an alleged hit-and-run vehicle. On February 24, 1997, Hartford moved for summary judgment and argued that no "hit and run" vehicle, as that term is defined in the insurance policy, had been involved in the accident. After a hearing, the trial court entered summary judgment in favor of Hartford, and Ackles now appeals.

We reverse.

### ISSUES

Ackles presents two issues on appeal, which we restate as:

1. Whether the trial court erred when it struck paragraph 9 of a witness's affidavit because it did not meet the requirements of Indiana Evidence Rule 701.

2. Whether the indirect physical contact doctrine operates to trigger the uninsured motorist provision in the insurance policy.

### FACTS

Porter was employed by Barber Manufacturing Company ("Barber") located in Anderson. On January 29, 1996, Porter was traveling north on State Road 15 in a truck owned by Barber. As he approached the crest of a rise in the road, Porter's truck veered across the southbound lane and left the road. The truck eventually struck or came to rest against some trees at the bottom of an embankment. Porter suffered severe injuries from the accident, and he died several weeks later.

At the time of the accident, Barber was insured under a policy issued by Hartford. The policy contained an uninsured motorist ("UM") provision which reads:

"Uninsured motor vehicle" means a land motor vehicle or trailer

a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the financial responsibility law of Indiana, or

b. For which an insuring or bonding company denies coverage or is or becomes insolvent, or

c. *Which is a hit-and-run-vehicle and neither the driver nor owner can be identified. A hit-and-run vehicle is one that causes "bodily injury" to an "insured" by hitting the "insured," a covered "auto" or a vehicle an "insured" is "occupying."*

(emphasis added).

Pursuant to this provision, Ackles filed a complaint against Hartford alleging that Porter's vehicle had swerved to avoid a large piece of fiberglass that had fallen from an unidentified southbound truck. Witnesses to the accident had observed a large piece of

fiberglass on the roadway where the accident occurred and that same piece of fiberglass was located at the site after the accident. Small pieces of fiberglass were discovered to be wedged between the cab and cargo box of Porter's truck. However, Ackles presented no direct evidence establishing that the fiberglass originated from the unidentified truck.

Hartford filed a motion for summary judgment and argued that Ackles' complaint failed to present facts triggering the UM provision of Barber's insurance policy with Hartford. Specifically, Hartford maintained that no "hit-and-run" vehicle, as that term is defined in the policy, was involved in the accident. In support, Hartford designated an affidavit by Dennis Wilson, a witness to the accident, which stated that he "did not see any fiberglass fall off of the flatbed trailer of the southbound pick-up truck or the southbound pick-up truck itself."

In response to Hartford's motion, Ackles designated a second affidavit by Wilson, which stated in relevant part:

6. As the white truck (the Porter vehicle) and my vehicle approached C.R. 1350N, I observed a large piece of fiberglass moving in a southeasterly direction at an angle across the road coming out of the southbound lane.

7. After I swerved to miss the large piece of fiberglass, I looked in my side view mirror to see where the fiberglass could have come from and I saw a pick-up truck pulling a flatbed trailer traveling in a southbound direction on S.R. 15.

8. Based on the direction the large piece of fiberglass was traveling, I did not believe that it had come off the white truck directly in front of me.

9. *Based on the movement of the fiberglass when I first observed it, the size of the fiberglass, the fact that it was sliding rather than blowing, I believed that the piece of fiberglass had come off the flatbed trailer that I observed traveling south on S.R. 15.*

(emphasis added).

After a hearing, the trial court issued findings and conclusions and granted summary judgment in favor of Hartford on two grounds. First, the court struck rhetorical paragraph 9 of Wilson's second affidavit on the basis that it did not satisfy the requirements of Indiana Evidence Rule 701. The court then concluded that Ackles had not presented "credible evidence upon which [to] sustain its burden of proof that the UM coverage under the policy [had been] triggered." Second, the court concluded that Ackles had not demonstrated that the truck itself, rather than an instrumentality originating from the truck, "hit" Porter's vehicle as required by the UM provision of the policy.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing a summary judgment decision, an appellate court applies the same standard as does the trial court. *USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 537 (Ind.1997). Summary judgment is warranted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Trotter v. Nelson*, 684 N.E.2d 1150, 1152 (Ind. 1997). Just as the trial court, we may only consider those parts of the pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice and other matters which have been designated by the parties to the trial court for consideration. *Trotter*, 684 N.E.2d at 1152.

■ Summary judgment must be denied if the resolution hinges upon state of mind, credibility of the witnesses, or the weight of the testimony. *Nelson v. Jimison*, 634 N.E.2d 509, 512 (Ind.Ct.App.1994). Even if it appears that the non-moving party will not succeed at trial, summary judgment is inappropriate where material facts conflict or undisputed facts lead to conflicting inferences. *Peters v. Judd Drugs, Inc.*, 602 N.E.2d 162, 164 (Ind.Ct.App.1992), *trans. denied.* Our standard of review is unchanged by the trial court's entry of findings of fact and conclusions thereon. *See Chicago Southshore & South Bend R.R. v. Itel Rail Corp.*, 658 N.E.2d 624, 629 (Ind.Ct.App.1995). Specific findings and conclusions are not re-

quired in the summary judgment context, and although they offer valuable insight into the trial court's rationale, they are not binding on this court. *Trout v. Buie,* 653 N.E.2d 1002, 1005 (Ind.Ct.App.1995), *trans. denied.*

## Issue One: Indiana Evidence Rule 701

Ackles first claims that the trial court erred when it struck rhetorical paragraph 9 of Dennis Wilson's second affidavit. We agree.

 Indiana Evidence Rule 701 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.

Opinion testimony by a lay witness is limited to those opinions rationally based on some combination of the witness's own personal observation, knowledge and past experience. 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 701.02 (1998) (discussing identical federal version of Rule 701); *accord Weaver v. State,* 643 N.E.2d 342, 345 (Ind.1994) (J. Debruler, concurring) (lay opinion is limited to that which follows from what person has directly observed and perceived).[1] The trial court is vested with broad discretion in determining whether the opinion testimony satisfies the requirements of Rule 701, and we will not reverse the trial court absent an abuse of discretion. *See Tyson v. Jones & Laughlin Steel Corp.,* 958 F.2d 756, 760–61 (7th Cir. 1992). Even if admissible under Rule 701, the trial court may choose to exclude the lay testimony under Evidence Rule 403 if its probative value is outweighed by its prejudicial effect.

To satisfy Rule 701(a), the lay witness must set forth enough facts to allow the trial court to find, pursuant to Evidence Rule 104(a), that the opinion is based on the witness's personal perceptions. 13 ROBERT L. MILLER, JR., INDIANA PRACTICE § 701.103 (1995). "When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because the opinion does not help the jury but only tells it in conclusory fashion what it should find." *United States v. Rea,* 958 F.2d 1206, 1216 (2nd Cir.1992). The extent of the requisite detail will vary from case to case, and is a matter within the trial court's discretion. 13 MILLER at § 701.103.

Lay witness opinion testimony must not only be based on the personal perception of the witness, it also must be "rationally" based on that perception. Thus, speculation or testimony based on improper inferences is inadmissible. *See, e.g., Keller v. United States,* 38 F.3d 16, 30–31 (1st Cir.1994); *Walton v. Jennings Community Hosp. Inc.,* 999 F.2d 277, 283–84 (7th Cir.1993). The objective "reasonable person" test, i.e., whether a reasonable person would form the opinion reached by the witness on the basis of the perceived facts, is the test most often used to determine the admissibility of lay opinion testimony. 13 MILLER at § 701.102.

Even if an opinion is rationally based on the witness's personal perception, the trial court must still find, under Rule 701(b), that the opinion is helpful to a clear understanding of the witness's testimony or to the determination of a fact in issue. According to one leading authority, opinion evidence is helpful in three general situations:

> (1) when an expression of the witness's personal knowledge could be conveyed in no other form, (2) when a witness formed an accurate total impression, although unable to account for all the details upon which it was based, or (3) most importantly, when an accounting of the details alone

---

1. Indiana Evidence Rule 704 further provides that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact." However, the rule excludes opinion testimony concerning intent, guilt or innocence in a criminal case, the truth or falsity of allegations, whether a witness has testified truthfully and legal conclusions.

would not accurately convey the total impression received by the witness.

Michael H. Graham, Handbook On Federal Evidence § 701.1 (1991). The commentators are unanimous that the helpfulness standard favors more detailed descriptions over the more abstract, especially as the opinion testimony draws nearer to the case's central issues. 13 Miller at § 701.106.

■ As previously stated, paragraph 9 of Wilson's second affidavit provides:

> Based on the movement of the fiberglass when I first observed it, the size of the fiberglass, the fact that it was sliding rather than blowing, I believed that the piece of fiberglass had come off the flatbed trailer that I observed traveling south on S.R. 15.

Wilson's opinion that the fiberglass came from or off the unidentified vehicle is rationally based on his personal perception of the circumstances leading to Porter's accident, including the velocity and direction of the fiberglass and its proximity to the other vehicles traveling along S.R. 15. Stated differently, a reasonable person could form the same opinion based on what Wilson personally observed. Thus, we conclude that the trial court erred when it concluded that paragraph 9 was "speculative."

■ We also disagree with the trial court's conclusion that paragraph 9 is not "helpful to the determination of a fact in issue inasmuch as it does not rule out any and all other possible set[s] of circumstances which may have caused, or been the origin of the piece of fiberglass." A witness's opinion need not exclude all other possibilities to be admissible. Neither must a witness's opinion be stated with certainty to be helpful. Graham at § 701.1 ("Absolute certainty on the part of the lay witness is not required; opinions expressed with qualifications such as 'I believe' or 'I can't be positive, but' may be admitted.... "). Wilson's testimony conveys his total impression of the accident more accurately than would a bald recitation of the facts. Thus, we conclude that the

testimony contained in paragraph 9 is helpful in determining the origin of the fiberglass, and it should have been admitted into evidence. The trier of fact will determine how much weight it should be given.

## Issue Two: Indirect Physical Contact Doctrine

■ The question then becomes whether the factual dispute created by Wilson's opinion testimony is "material" to the resolution of this case. In granting summary judgment for Hartford, the trial court concluded that Ackles had not presented evidence that a "hitting" had occurred, even assuming that the fiberglass originated from the unidentified truck. In response, Ackles maintains that the trial court erred when it disregarded the "indirect physical impact doctrine" as set forth by this court in *Allied Fidelity Ins. Co. v. Lamb*, 361 N.E.2d 174 (Ind.Ct.App.1977).

In *Lamb*, the plaintiff's daughter was killed when a rock, projected by the wheels of an unidentified vehicle, struck the windshield of the car in which she was a passenger. The plaintiff brought an action seeking recovery under the hit-and-run provision of his insurance policy.[2] Eventually, the jury found for the plaintiff and awarded damages. On appeal, this court stated:

> [T]here need not be a direct physical touching between the hit-and-run automobile and the insured automobile in all instances before the "physical contact" condition is satisfied. *If a substantial physical nexus between the hit-and-run vehicle and the intermediate object is shown and if the transmitted force is continuous and contemporaneous, as when one object hits a second impelling it to strike a third, we believe that "physical contact," within the policy's meaning, exists.*

*Id.* at 179 (emphasis added).

Hartford insists that this court's discussion of the indirect physical contact doctrine in *Lamb* is dicta since the case was ultimately

2. That provision provided in relevant part:
 " '[H]it-and-run automobile' means an automobile which causes bodily injury arising out of physical contact of such automobile with the insured or with an automobile which the insured is occupying at the time of the accident.... "
 *Id.* at 176.

decided on other grounds.[3] Hartford instead argues that this court's earlier decision in *Blankenbaker v. Great Central Ins. Co.*, 151 Ind.App. 693, 281 N.E.2d 496 (1972), in which we rejected the doctrine, controls our decision in the present case.

In *Blankenbaker*, the plaintiff sought hit-and-run coverage following an accident in which his vehicle struck a tire and rim assembly lying on the highway. *Id.* at 702–03, 281 N.E.2d at 501–02. In contrast to *Lamb*, there was no explanation regarding the origin of the tire and rim assembly, how it came to rest on the highway, or what happened to it after the accident. The court held that because "the assembly was not shown to be part of a hit-and-run automobile ... there was no physical contact, direct or indirect, with a hit-and-run automobile." *Id.* However, the court continued:

> Even if it is assumed that the tire and rim assembly had momentarily come to rest after falling off an ongoing vehicle, contact by [the plaintiff's vehicle] with it is too remote and disconnected to constitute contact with an "automobile." *We reject the indirect physical contact doctrine. To accept it is to rewrite the contract between the parties.*

*Id.* (emphasis added).

We disagree that the discussion of the indirect physical contact doctrine in *Lamb* amounts to *dicta*. Although the case was ultimately decided on the issue of negligence, the court expressly adopted and applied the indirect physical contact doctrine. *Lamb*, 361 N.E.2d at 179. Thus, contrary to Hartford's assertion, *Blankenbaker* does not control our decision. Further, the facts in *Blankenbaker* are distinguishable from those presented here. As we noted in *Lamb*:

> *Blankenbaker* is factually distinguishable from the case at bar. Here, a causal con-

nection is established between the hit-and-run automobile and the intermediate propelled object. Here, the possibilities of fraud are remote. Here, there exists objective evidence from which the trier of fact could reasonably conclude that the unidentified vehicle was the original transmitter of the force causing the accident.

*Id.*, at 178. We also rejected *Blankenbaker*'s comment that the indirect physical contact doctrine would rewrite the parties' contract. Specifically, the *Lamb* court found that the phrase "physical contact," as used in the parties' insurance policy, was subject to more than one reasonable interpretation and, thus, its meaning could be "enlarged or contracted in appropriate occasions to prevent unjust and absurd results." *Id.* at 179.

Here, as in *Lamb*, there is evidence of a causal connection between the unidentified vehicle and the fiberglass from which the trier of fact could reasonably conclude that the unidentified truck was the original transmitter of the force causing the accident. *See id.* at 178. Ackles has presented evidence that Porter did, in fact, hit the fiberglass. *Cf. Indiana Ins. Co. v. Allis*, 628 N.E.2d 1251 (Ind.Ct.App.1994) (no contact, direct or indirect, where driver swerves to avoid another vehicle), *trans. denied*. Wilson's opinion testimony, if accepted by the trier of fact, establishes a substantial physical nexus between the unidentified truck and the fiberglass. In addition, the potential for fraud in this case is remote. Wilson is a disinterested witness, and there is nothing in the record to suggest that he is in collusion with Ackles. Finally, the term "hitting," as used in Barber's insurance policy, is no less ambiguous than the phrase "physical contact." Thus, application of the indirect physical contact doctrine to these facts does not rewrite the terms of the contract.[4]

3. Although the court adopted the indirect physical contact doctrine, the court reversed the trial court's judgment because the plaintiff had not presented evidence of the hit-and-run driver's negligence as required by the insurance policy. *Id.* at 180.

4. We reiterate the court's statement in *Lamb* that:
> Our holding should not be interpreted as allowing all types of indirect physical contact to

satisfy the policy condition. We have not attempted to make a blanket acceptance of the doctrine. Situations will undoubtedly arise in which indirect physical contact will not be sufficient. The *Blankenbaker* case is illustrative of a situation in which the indirect physical contact doctrine fails because of temporal and causal remoteness. Neither is our holding to be interpreted as a derogation of the requirement of *some* type of physical contact.

## CONCLUSION

We conclude that paragraph 9 of Wilson's second affidavit satisfies the requirements of Indiana Evidence Rule 701. Given that evidence and our application of the indirect physical contact doctrine, Ackles has demonstrated that a genuine issue of material fact exists as to whether the unidentified truck indirectly hit Porter's vehicle. Thus, we conclude that the trial court erred when it granted summary judgment in favor of Hartford.

Reversed.

BAILEY and RILEY, JJ., concur.

*Id.* at 179 (emphasis in original).