**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT (MOTHER):

**JOEL C. WIENEKE**
Wieneke Law Office, LLC
Plainfield, Indiana

ATTORNEY FOR APPELLANT (FATHER):

**SCOTT F. BIENIEK**
Jeffrey A. Boggess, P.C.
Greencastle, Indiana

ATTORNEYS FOR APPELLEE:

**DOUGLAS J. PURDY**
Indiana Department of Child Services
Greencastle, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
May 31 2013, 9:19 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE TERMINATION )
OF THE PARENT-CHILD RELATIONSHIP )
OF: C.T.; B.E.T.; & N.T. (Minor Children), )
and J.T. (Mother) & B.T. (Father), )
    Appellants-Respondents, )
                      )
              vs. )  No.  67A04-1210-JT-543
                      )
THE INDIANA DEPARTMENT OF )
CHILD SERVICES, )
                      )
    Appellee. )

APPEAL FROM THE PUTNAM CIRCUIT COURT
The Honorable Matthew L. Headley, Judge
Cause No.  67C01-1202-JT-2
Cause No.  67C01-1202-JT-3
Cause No.  67C01-1202-JT-4

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

J.T. ("Mother") and B.T. ("Father") (collectively, "Parents") appeal the termination of their parental rights as to C.T., B.T., and N.T. (collectively, "Children").

We affirm.

## Issues

Parents raise numerous issues in their briefs, which we consolidate and restate as:

I.      Whether the termination court abused its discretion in the admission of evidence;

II.     Whether Parents were deprived of their procedural due process rights as guaranteed by the Fourteenth Amendment; and

III.    Whether there was sufficient evidence to support the termination court's order.

## Facts and Procedural History

C.T. was born to Mother on July 30, 2003. B.T. and N.T. were born to Mother and Father on May 14, 2005, and April 13, 2008, respectively. On November 1, 2010, Tim Haltom ("Haltom"), an investigator with the Department of Child Services ("DCS"), visited Parents' residence in Cloverdale, Indiana, to investigate a report that five-year-old B.T. was bruised and had complained of pain to school officials. After Father refused access to the residence, Haltom summoned law enforcement. Eventually, Haltom was granted access to Parents' residence.

Parents' residence was filthy, with debris all over. There were human feces, and urine soaked mattresses. Haltom observed that C.T. had bruising on his upper right back, and that B.T. had bruises and marks consistent with having been hit with a belt. (Tr. at 72-74.) Mother eventually admitted to Haltom that Children "do get their butts whooped," and Father admitted that he had used a belt to discipline B.T. (Tr. at 73-74.)

The same day, DCS removed Children from Parents' home. A Child in Need of Services ("CHINS") petition was filed on November 4, 2010; at a fact finding hearing on January 6, 2011, Parents admitted that Children were CHINS, and the CHINS court adjudicated Children as such. (Appellant's App. at 11.)

On September 27, 2011, DCS filed an Emergency Motion for More Restrictive Visitation, based upon information it received from Dr. Armen Sarkissian ("Dr. Sarkissian"), a licensed psychologist who had been working with Children for about a month. (Appellant's App. at 71-74.) The same day, the CHINS court granted DCS's motion. (Appellant's App. at 75.)

Because of the conduct that gave rise to this case, on January 26, 2012, Father was convicted of Battery Resulting in Bodily Injury, and Neglect of a Dependent, both as D felonies, and Mother was convicted of Neglect of a Dependent, as a D felony. (State's Exs. 27, 29).[1]

On February 23, 2012, DCS filed petitions to terminate Parents' rights as to Children.

---

[1] This Court affirmed on appeal Mother's conviction in Taskey v. State, Cause Number 67A01-1204-CR-164 (Ind. Ct. App. Nov. 29, 2012), and Father's convictions in Taskey v. State, Cause Number 67A04-1204-CR-189 (Ind. Ct. App. Dec. 14, 2012).

On June 7 and 18, 2012, DCS notified Parents that a hearing would take place on June 25, 2012, to determine the admissibility of testimony by Dr. Sarkissian regarding out-of-court statements made by C.T. (Appellant's App. at 100-103.)

At the June 25, 2012 hearing, Dr. Sarkissian testified that C.T. told him during therapy sessions about physical abuse Father had inflicted. (Tr. at 26.) Dr. Sarkissian further testified, inter alia, that requiring C.T. to testify in court would create a substantial likelihood of emotional or mental harm. On July 2, 2012, the termination court found that the requirements of Indiana Code section 31-35-4-3 had been satisfied, and issued an order allowing DCS to introduce Dr. Sarkissian's testimony as to statements by C.T. (Appellant's App. at 104.)

On July 5, 2012, the termination court conducted an evidentiary hearing. On September 28, 2012, the termination court issued its Findings of Fact, Conclusions of Law, and Order terminating Parents' rights as to Children.

Parents now appeal.

**Discussion and Decision**

Parental rights are of a constitutional dimension, but the law provides for the termination of those rights when the parents are unable or unwilling to meet their parental responsibilities. Bester v. Lake Cnty. Office of Family & Children, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Our standard of review is highly deferential in cases concerning the termination of

4

parental rights. A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1249 (Ind. Ct. App. 2002), trans. denied. We neither reweigh the evidence nor judge the credibility of the witnesses. In re A.I., 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), trans. denied. We consider only the evidence and reasonable inferences that are most favorable to the termination court's judgment. See Bester, 839 N.E.2d at 147.

The termination court made specific findings of fact and conclusions thereon, therefore we apply a two-tiered standard of review. Id. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will not set aside the termination court's judgment terminating a parent-child relationship unless it is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the termination court's conclusions, or the conclusions do not support the judgment. Id.

To terminate a parent-child relationship, DCS must allege and prove by clear and convincing evidence, inter alia: that the child has been removed from the parent for at least six months under a dispositional decree; that there is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied, or that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child; and that termination is in the best interests of the child. Ind. Code § 31-35-2-4(b)(2); In re A.I., 825 N.E.2d at 805. If the court finds these allegations to be true, the court shall terminate the parent-child relationship. I.C. § 31-35-2-8(a). A termination court must judge a parent's

fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed conditions. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The termination court also must "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The termination court "can also reasonably consider the services offered by . . . [DCS] to the parent and the parent's response to those services." Id. A court need not wait until a child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating a parent-child relationship. Id.

## I. Admission of Evidence

Parents allege two evidentiary errors. "The admission of evidence is entrusted to the sound discretion of the [termination] court." In re A.J., 877 N.E.2d 805, 813 (Ind. Ct. App. 2007), trans. denied. "We will find an abuse of that discretion only where the [termination] court's decision is against the logic and effect of the facts and circumstances before the court." Id. Furthermore, "[t]he fact that evidence was erroneously admitted does not automatically require reversal, and we will reverse only if we conclude the admission affected a party's substantial rights." Id.

### A. Child Hearsay

Parents contend that the termination court abused its discretion when it admitted testimony by Dr. Sarkissian regarding out-of-court statements made by C.T.[2] Out-of-court statements by a child are generally not admissible in a termination action unless:

---

[2] Father's Appellant's Brief also refers to out-of-court statements made by B.T., but our review of the record reveals no out-of-court statements made by B.T. to which Dr. Sarkissian testified.

> (1) the court finds that the time, content, and circumstances of the statement . . . and any other evidence provide sufficient indications of reliability; and
> (2) the child[] . . . is found by the court to be unavailable as a witness because[] . . . a psychiatrist, physician, or psychologist has certified that the child's participation in the proceeding creates a substantial likelihood of emotional or mental harm to the child[.]

I.C. §§ 31-35-4-2 & 31-35-4-3. Furthermore, child hearsay may not be admitted unless DCS's attorney informs the parties of an intention to introduce the statement into evidence, and the content of the statement or videotape, at least seven days before the proceedings. I.C. § 31-35-4-4.

Here, the evidence most favorable to the judgment discloses that: DCS's attorney notified Parents of the general contents of the statements of C.T. at least seven days in advance of the child hearsay hearing; Dr. Sarkissian testified as to the reliability of the statements of C.T. that DCS intended to introduce into evidence; and Dr. Sarkissian testified that requiring C.T. to testify in court would create a substantial likelihood of emotional or mental harm. In granting DCS's motion for the admission of child hearsay, the termination court explicitly stated that it had considered the requirements of Indiana Code section 31-35-4-3, and thus implicitly concluded that the statutory requirements had been satisfied. We find no abuse of discretion in the termination court's admission of testimony by Dr. Sarkissian regarding out-of-court statements made by C.T.

Furthermore, even if admission of Dr. Sarkissian's testimony was an abuse of discretion, we must examine whether Parents' substantial rights were affected. In re A.J., 877 N.E.2d at 813. Because we conclude infra that there was sufficient evidence to support the termination court's order, we cannot agree that Parents' substantial rights were

7

prejudiced.

## B. Non-Expert Opinion Testimony

Father contends that the termination court abused its discretion when it admitted Haltom's testimony regarding the age and causation of bruising to Children, because such testimony was the province of an expert witness, and Haltom had not been qualified as such. However, a lay witness may testify as to opinions or inferences which are rationally based on some combination of the witness's own personal observation, knowledge, and past experience.[3] See Ind. Evidence Rule 701; see also Ackles v. Hartford Underwriters Ins. Corp., 699 N.E.2d 740, 743 (Ind. Ct. App. 1998), trans. denied. Furthermore, the termination court has broad discretion to determine whether testimony is admissible. See In re A.H., 832 N.E.2d 563, 565 (Ind. Ct. App. 2005).

Here, Haltom testified that in his four years of experience as a DCS assessment worker in Putnam County he had seen other children who had been battered by belts, and he opined that the marks on B.T. were consistent with having been made by a belt. This opinion is rationally based on Haltom's personal observation, knowledge, and past experience, and thus the termination court did not abuse its discretion when it admitted Haltom's testimony as to the age and causation of Children's bruises.

---

[3] Father cites to King v. State for the proposition that testimony regarding the age and causation of bruising is opinion testimony properly reserved for an expert. 531 N.E.2d 1154, 1158-59 (Ind. 1988). However, this argument misconstrues King, in which the Indiana Supreme Court held, inter alia, that it was not error to permit an expert witness to testify as to the possible cause of bruising on a murder victim despite the witness's uncertainty as to the cause of some of the bruises, when the witness demonstrated familiarity with bruising patterns and causation, and her expertise in that area was unchallenged. Id.

## II. Due Process

Father contends that Parents were denied procedural due process when the termination court granted DCS's Emergency Motion for More Restrictive Visitation without providing Parents an opportunity to respond, and without holding a ten-day hearing in accordance with Indiana Trial Rule 65.[4] Father asserts that, by granting DCS's motion, the termination court substantially curtailed Parents' visitation with Children and impeded progress toward reunification, thus precipitating the termination of their parental rights.

When the State seeks the termination of a parent-child relationship, it must do so in a manner that meets the requirements of the Due Process Clause. Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 181 (Ind. Ct. App. 2006) (referring to U.S. Const. amend. XIV). The parents must be afforded the opportunity to be heard at a meaningful time and in a meaningful manner. Id. Due process in termination cases involves the balancing of three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing government interest supporting the use of the challenged procedure. Id. It is well established, however, that a party on appeal may waive a constitutional claim. McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003).

Father provides no authority to support his argument that Trial Rule 65 applies to

---

[4] Mother contends that she was denied procedural due process when DCS failed to provide her with reasonable efforts toward family preservation or reunification. "However, the provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal." In re E.E., 736 N.E.2d 791, 796 (Ind. Ct. App. 2000). As such, "[a] failure to provide services[] . . . does not serve as a basis on which to directly attack a termination order as contrary to law." Id.; see also In re H.L., 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009).

9

DCS's motion, and therefore he has waived this issue. See Ind. Appellate Rule 46(A)(8)(a) (an appellant must support his arguments by cogent reasoning, and by citations to the authorities and statutes relied on). However, waiver notwithstanding, Father has failed to demonstrate any prejudice.

Here, Parents' private interest in the care, custody, and control of their children is a fundamental liberty interest, and thus is substantial. See Hite, 845 N.E.2d at 181. The government's interest is also substantial, as the State of Indiana has a compelling interest in protecting the welfare of its children. Id. Thus, in analyzing both alleged due process issues, we look to the risk of error created by the State's chosen procedure. See id.

The evidence discloses that, in addition to Parents' felony convictions for the conduct that gave rise to this case, Dr. Sarkissian observed Children's behavior deteriorate and their development regress as unsupervised visitation time with Parents increased. (Appellant's App. at 73-74; Tr. at 187-88, 196-97.) Further, Dr. Sarkissian observed that Parents were unable to acknowledge what they had done to Children, and he opined that no progress could be made toward reunification until Parents could admit to the nature and character of their actions. (Appellant's App. at 73-74; Tr. at 204.)

The decreased visitation had a minimal effect, if any on the termination of Parents' rights, and thus there was little risk of error created by the State's chosen procedure. We find no due process violation with respect to this argument.

### III. Sufficiency of the Evidence

Finally, Mother contends that the findings are unsupported by the evidence. In

particular, she challenges the following findings:

12. [A]s punishment, the parents beat the children to the point of injury, denied them food and locked them in a room without the use of bathroom facilities.

19. Parents believed that they had no need for family therapy as they already knew all they needed to know.

20. Father has told the children that they would be severely physically punished if they discussed, with case providers, what had happened to them. Such threats actually occurred during therapy when the parents would whisper threats to the children.

35. The parents have shown a continuing pattern of unwillingness to deal with parenting problems and have not made progress toward changing the conditions that led to the children's harm.

45. There is a reasonable probability that: by clear and convincing evidence, the conditions that resulted in the children's removal or the reasons for the placement outside the parent's home will not be remedied and/or the continuation of the parent child relationship poses a threat to the well being of the children, in that:

    i. the parents ha[ve] never truly accepted responsibility for the role they played in causing the children's extreme trauma and abuse which indicates an inability or unwillingness to make the changes necessary to address the children's needs.

(Appellant's App. at 26-30) (emphasis in original).

However, our review of the record reveals that, in addition to Parents' felony convictions for the conduct that gave rise to this case, Haltom observed that C.T. had bruising on his upper right back, and that B.T. had bruises and marks consistent with having been hit with a belt. (Tr. at 72-74.) Mother admitted to Haltom that Children "do get their butts whooped," and she produced a belt and said "this is the belt we use on the children." (Tr. at 73.) Father also admitted to Haltom that he had used a belt to discipline B.T. (Tr. at 74.)

Dr. Sarkissian testified that C.T. described being locked up in his room, sometimes without food and without access to the bathroom. (Tr. at 194, 202.) Dr. Sarkissian further

11

testified that he had learned from C.T. that C.T. had been told not to talk to Dr. Sarkissian, and that Father would whisper to C.T. during supervised visitation that he would get in trouble if he talked to him. (Tr. at 192.)

When Dr. Sarkissian worked with Parents, they told him that they had sufficient knowledge to parent properly, even though such knowledge was not reflected in Parents' actions, or in what they reported to him. (Tr. at 191.) When Dr. Sarkissian recommended that Parents do parenting therapy, they responded that they had already been through parenting therapy, and knew everything that there was to know. (Tr. at 192.)

Ginny Rundel ("Rundel"), a DCS family case manager for much of the termination case, testified that, to the extent Parents complied with what they were asked to do, "it was . . . surface compliance." (Tr. at 251.) Rundel further testified that Mother had never acknowledged either that she had played a role in failing to protect Children, or that she was in some way responsible for the trauma to which they were exposed. (Tr. at 254.)

The termination court's findings are clearly supported by the evidence, which we will not now reweigh. See In re A.I., 825 N.E.2d at 805. The termination court's judgment thus is not clearly erroneous.

## Conclusion

The termination court did not abuse its discretion in the admission of evidence, Parents were not deprived of due process, and there was sufficient evidence to support the termination court's order.

Affirmed.

12

NAJAM, J., and BARNES, J., concur.