

FILED
Jun 02 2015, 9:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

James E. Ayers
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEE

J. Joseph Tanner
John T. Schlafer
Faegre Baker Daniels LLP
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles R. Whitlock,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Steel Dynamics, Inc.,<br>*Appellee-Defendant.* | June 2, 2015<br><br>Court of Appeals Case No.<br>32A05-1404-CT-189<br><br>Appeal from the Hendricks Superior Court<br><br>The Honorable Stephenie LeMay-Luken, Judge<br><br>Case No. 32D05-1304-CT-64 |

**Vaidik, Chief Judge.**

# Case Summary

Indiana Code section 34-11-6-1 provides that a "person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed." Legal disability includes mental incompetence.

[2] In this case, Charles R. Whitlock—who was injured when a crane failed to stop and struck him in the face, causing lacerations to his forehead and eyelid—filed his complaint eight days after the two-year statute of limitations expired. He claims, however, that he was mentally incompetent when the cause of action accrued. The trial court granted summary judgment in favor of Steel Dynamics, Inc., on grounds that Whitlock filed his complaint after the statute of limitations expired.

[3] We find that the designated evidence in this case is not sufficient to establish a material dispute of fact because Whitlock's affidavits address the central issue of the case—whether Whitlock was mentally incompetent—without giving details sufficient to support the conclusory statements. We therefore affirm the trial court.

## Facts and Procedural History

[4] On April 15, 2011, Whitlock was an employee of Trivetts Construction Company and was working at Steel Dynamics in Hendricks County, Indiana. That day, Whitlock was injured when a crane failed to stop and struck him in the face, causing lacerations to the center of his forehead and his left eyelid. Whitlock was taken by ambulance to the emergency room at Hendricks Regional Health in Danville. Whitlock was "[a]lert and oriented" at the

hospital, and he self-reported no vomiting or loss of consciousness.[1] Appellant's App. p. 65 (Ex. 1). Whitlock was able to use "correct words with no slurring" and had no problems talking to the doctors or understanding what they said to him. *Id.* at 56-57. A head CT revealed no bleeding in the brain and no fractures.

[5] Whitlock was transferred by ambulance to the emergency room at Methodist Hospital in Indianapolis because he required stitches to his eyelid, and Hendricks Regional Health did not have an eye surgeon to perform that procedure. Whitlock himself signed consent forms authorizing his transfer to Methodist Hospital and the procedure on his eyelid. *Id.* at 72 (Ex. 2), 60. Whitlock was "[a]wake, alert, and appropriate" at Methodist Hospital. *Id.* at 76. Indeed, Whitlock distinctly recalled a conversation with the eye surgeon, who was upset because he thought Hendricks Regional Health should have been able to stitch his eyelid. *Id.* at 60-61. In addition, Whitlock scored a 15 on the Glasgow Coma Scale,[2] which is the highest level of functioning and indicates no deficiency in neurological activity. *Id.* at 78-79.

---

[1] According to Whitlock, his wife told him that he lost consciousness, but she described it as "zon[ing] in and zon[ing] out." Appellant's App. p. 62. Whitlock said he still zones in and out "to this day." *Id.*

[2] The Glasgow Coma Scale "is the most common scoring system used to describe the level of consciousness in a person following a traumatic brain injury." Brainline, *What is the Glasgow Coma Scale*, http://www.brainline.org/content/2010/10/what-is-the-glasgow-coma-scale.html (last visited May 26, 2015).

Whitlock was not admitted to either hospital and went home that same day, April 15, with a prescription for Vicodin. Notably, Whitlock was not diagnosed with a concussion or any other brain injury. Whitlock's mother-in-law, Dorothy Gaultney, removed Whitlock's stitches at his Greensburg home on April 24 because Whitlock did not want to return to Indianapolis. Whitlock never received any other medical care for his injuries.

Whitlock filed a complaint against Steel Dynamics on April 23, 2013—eight days after the two-year statute of limitations[3] expired—alleging that Steel Dynamics was responsible for the alleged faulty crane switch that caused his injuries. Whitlock claimed that his injuries "incapacitated" him such that he was "disabled for a substantial period" following the accident, including April 15, 2011, to April 24, 2011, "and extending afterward." *Id.* at 18. Steel Dynamics filed a motion for summary judgment alleging that Whitlock filed his complaint eight days after the statute of limitations expired. *Id.* at 26. Steel Dynamics claimed that "the undisputed evidence shows that [Whitlock] was not injured in a manner sufficient to excuse his failure to file his Complaint within the two-year statute of limitations." *Id.* Whitlock responded and designated affidavits from his wife, Kristina Whitlock, and his mother-in-law,

---

[3] An action for injury to person "must be commenced within two (2) years after the cause of action accrues." Ind. Code § 34-11-2-4(a)(1). It is undisputed that the cause of action accrued on April 15, 2011.

Whitlock does not argue that this statute of limitations is unconstitutional or unconstitutional as applied to him. *See, e.g.*, *Martin v. Richey*, 711 N.E.2d 1273 (Ind. 1999).

Gaultney.[4] Kristina's affidavit focuses on Whitlock's physical disability as a result of his injuries with some mention of his mental state:

> [W]hen I got him home [on April 15] I had to help him out of the truck into the house and I got him on the couch, at that point he was pretty much totally done for. He had to have help to be moved around at all times he could not even get up to go to the bathroom by himself without having to be helped and if he got up and went to the bathroom he would go back to the couch and go straight back to sleep. He was disoriented, when he would wake up you would try to talk to him and he would have to think a long time about what he was saying before he said it, like he was forgetting, and this went on for probably 15 to 20 days before he actually started kinda [sic] acting more like himself. Even now at this point, when you are talking to him, in the middle of a conversation he'll forget what he is talking about and he never done [sic] that before. He was down for two weeks he didn't get up and do anything, he was still disoriented and incoherent, after that couple of weeks he started moving around on his own. His lack of movement was on account of the head injury and the headaches and the pain. . . .
>
> After the accident I would say that for the first 2 to 3 weeks he was clearly disabled, then he started getting up and moving around and started doing things for himself, I didn't have to help him to the bathroom, but those first few weeks, when he got up, he would go to stand up off the couch and he would get dizzy and he would just sit back down and I would go over and help him up off the couch and I would walk with him to the bathroom and I would have my hands on him at all times even when he was in there using the bathroom. I stayed in there with him and kept my hands on him so he would not fall down. He was talking but you could tell that he was not all there, he would change the subject in the middle of what you were talking about and forget what you were talking about and just quit talking. . . . [E]ven now, sometimes he will be in the middle of a conversation and he will forget what he is talking about . . . .

---

[4] Whitlock also designated portions of his medical records and deposition as well as photographs of his injuries. *See* Appellant's App. p. 97-98.

*Id.* at 108-09.

[8] Gaultney also submitted an affidavit describing her interaction with Whitlock when she removed his stitches on April 24, 2011, nine days after the accident. This affidavit provides, in part:

> 5.  I was asked by my daughter to come to their house on Sunday April 24, Easter Sunday, to remove stitches from the wound on his face and head.
>
> 6.  At that time Charles was not yet able to speak coherently, his balance was such that he had to be assisted from the bed to the couch and to his bathroom. If he was awakened and required to move around he would then immediately doze off again. He did not recognize me at first, and at that time he was not fit to care for himself or to understand what was going on around him.
>
> 7.  I saw him again on about the 28th, by then he was some better, but not much. He could move around by himself and was able to keep his balance with difficulty. His speech was still slurred and he could not concentrate for very long.
>
> 8.  It was not until about six (6) weeks after the injury that he was able to function without hurting himself.

*Id.* at 113.

[9] In March 2014 the trial court granted summary judgment in favor of Steel Dynamics "on the basis of the statute of limitations . . . ." *Id.* at 118 (capitalization omitted). The court thus dismissed Whitlock's claims against Steel Dynamics with prejudice. *Id.*

[10] Whitlock now appeals.

# Discussion and Decision

[11] Although Whitlock filed his complaint after the two-year statute of limitations expired, he tries to preserve his late-filed claim by alleging that he was "incompetent from April 15, 2011 to sometime well after April 24, 2011," thereby giving him extra time to file his complaint. Appellant's Br. p. 12.

[12] The standard of appellate review of a summary-judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 695 (Ind. 2000), *reh'g denied*; *see also* Ind. Trial Rule 56(C). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmoving party. *Boggs*, 730 N.E.2d at 695. The statute-of-limitations defense is particularly suitable as a basis for summary judgment. *Anonymous Physician v. Wininger*, 998 N.E.2d 749, 751 (Ind. Ct. App. 2013). When the moving party asserts the statute of limitations as an affirmative defense and establishes that the action was commenced beyond the statutory period, the burden shifts to the nonmovant to establish an issue of fact material to a theory that avoids the defense. *Boggs*, 730 N.E.2d at 695; *see also Manley v. Sherer*, 992 N.E.2d 670, 674 (Ind. 2013).

[13] In addition, Indiana Trial Rule 56(E) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Affidavits must comply with Indiana Evidence Rule 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> > (a) rationally based on the witness's perception; and
> >
> > (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

The witness must set forth enough facts to allow the trial court to find, pursuant to Evidence Rule 104(a), that the opinion is rationally based on the witness's personal perceptions. *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743 (Ind. Ct. App. 1998), *trans. denied*; 13 Robert Lowell Miller, Jr., *Indiana Practice* § 701.103 (3d ed. 2007). The witness need not identify all of the perceived facts on which the opinion is based, 13 Robert Lowell Miller, Jr., at § 701.103; rather, the witness must merely provide a basis sufficient for the judge to determine that the opinion is *rationally* based on the perceptions of the witness. When a witness has not identified the objective bases for her opinion, the proffered opinion obviously fails to meet the requirements of Evidence Rule 701 because (1) there is no way for the court to assess whether it is rationally based on the witness's perceptions and (2) the opinion does not help the fact-finder but only tells it in conclusory fashion what it should find. *Ackles*, 699 N.E.2d at 743; *see also Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) ("Conclusory statements not admissible at trial should be disregarded when determining whether to grant or deny a summary judgment motion."). The extent of the requisite detail varies from case to case, and lies within the trial court's discretion. *Ackles*, 699 N.E.2d at 743; 13 Robert Lowell Miller, Jr., at § 701.103. Courts require greater detail as the subject of the opinion draws nearer to a central issue in the case. 13 Robert Lowell Miller, Jr., at § 701.103.

[14]    Here, Steel Dynamics has established that Whitlock filed his complaint beyond the statutory period. Therefore, the burden shifts to Whitlock to establish an issue of material fact regarding his claim that he was under a legal disability when the cause of action accrued. A "person who is *under legal disabilities* when the cause of action accrues may bring the action within two (2) years after the disability is removed." Ind. Code § 34-11-6-1 (emphasis added). This statute does not toll the basic statute of limitations; rather, the basic statute continues to run, and Section 34-11-6-1 "in effect, simply renders its running inapplicable by providing a special limitation, or grace period, of two years after the disability is removed." *Collins v. Dunifon*, 163 Ind. App. 201, 323 N.E.2d 264, 268 (1975). "Under legal disabilities" includes "persons less than eighteen (18) years of age, *mentally incompetent*, or out of the United States." Ind. Code § 1-1-4-5(24) (emphasis added). "Mentally incompetent," in turn, means "of unsound mind." I.C. § 1-1-4-5(12). "Of unsound mind" is not currently defined in the Indiana Code. *See Fager v. Hundt*, 610 N.E.2d 246, 250 n.2 (Ind. 1993). The Indiana Supreme Court noted that although the phrase "of unsound mind" was previously defined, that statute was repealed in 1990 by P.L. 1-1990, Sec. 334. *Id.* (citing the previous statute, Indiana Code section 34-1-67-1). Specifically, "of unsound mind" was previously defined to include "idiots, noncompotes (non compos mentis), lunatics and *distracted persons*." *Id.* (emphasis added). The phrase "distracted person" was construed to mean "a person who by reason of his or her mental state is incapable of managing or procuring the management of his or her ordinary affairs." *Id.* (quoting *Duwe v. Rodgers*, 438 N.E.2d 759, 761 (Ind. Ct. App. 1982)); *see also Collins*, 323 N.E.2d

at 269 (noting that to be considered of unsound mind, the relevant proof "is whether the person claiming the benefit of the extension statute is incapable of either understanding the rights that he would otherwise be bound to know, or of managing his affairs, with respect to the institution and maintenance of a claim for relief").

[15] In cases involving injuries more severe than those sustained by Whitlock, this Court has found that those injuries did not render the plaintiff incompetent. For example, in *Indiana Department of Highways v. Hughes*, 575 N.E.2d 676 (Ind. Ct. App. 1991), *trans. denied*, Nancy Hughes was injured when the car in which she was a passenger struck a bridge abutment. She suffered a "badly broken left lower leg and ankle, as well as a superficial scalp laceration." *Id.* at 677. Nancy's scalp wound was treated in the emergency room, and she was hospitalized for two months for the repair of her fractures and for physical therapy. *Id.* The evidence showed that during her hospital stay, Nancy was able to pay bills, communicate by mail and telephone, receive visitors, discuss her accident and injuries, and sign consent-for-treatment forms. Nancy filed an Indiana Tort Claims Act (ITCA) notice with the Indiana Attorney General and the State Highway Department. Although the notice must be filed within 180 days of the claimed loss, Nancy filed her notice more than 100 days late. However, according to the statute in effect at the time, Ind. Code Ann. § 34-4-16.5-8 (West 1986), if a person was "incompetent," then the 180-day period did

not begin until the incompetency was removed.[5]  *Id.* at 678.  An incompetent person was defined as a person who is "under the age of eighteen [18] years or is incapable by reason of insanity, mental illness, or other incapacity of either managing his property or caring for himself or both."  *Id.*

[16]     We held that Nancy was not incompetent just because she had a badly broken leg and ankle that required a two-month hospital stay.  Rather, the evidence showed that:

> [Nancy was] mentally alert at virtually all times from the day of the accident forward.  She paid her bills, signed consent forms, received visitors, discussed the accident, and contemplated legal action—all within a few weeks of the accident.  Moreover, while she was obviously physically impaired and could not independently perform all acts regarding her personal care and property, there simply was no

---

[5] The statute, which is currently codified at Indiana Code section 34-13-3-9, now uses the term "incapacitated" instead of "incompetent":

> If a person is incapacitated and cannot give notice as required in section 6 or 8 of this chapter, the person's claim is barred unless notice is filed within one hundred eighty (180) days after the incapacity is removed.

The Indiana Supreme Court has explained that "incompetence" and "incapacity" are not the same thing.  *Polick v. Ind. Dep't of Highways*, 668 N.E.2d 682, 684 (Ind. 1996).  For purposes of Indiana Code chapter 34-13-3, "incapacitated" has the meaning set forth in Indiana Code section 29-3-1-7.5.  Ind. Code § 34-6-2-65.  Section 29-3-1-7.5 defines "incapacitated person" as a person who:

> (2) is unable:
>
>> (A) to manage in whole or in part the individual's property;
>>
>> (B) to provide self-care; or
>>
>> (C) both;
>
> because of insanity, mental illness, mental deficiency, physical illness, infirmity, habitual drunkenness, excessive use of drugs, incarceration, confinement, detention, duress, fraud, undue influence of others on the individual, or other incapacity . . . .

Unlike mental incompetence, incapacity includes physical limitations.

evidence it was unreasonable for her to have to comply with ITCA's notice provisions.

*Id.* at 678-79; *see also Overton v. Grillo*, 896 N.E.2d 499, 504 (Ind. 2008) (finding that plaintiff's severe depression, anxiety, sleep deprivation, and chemotherapy and radiation treatments were insufficient as a matter of law to establish that she was "incapacitated" for purposes of tolling the Medical Malpractice Act), *reh'g denied*; *Duwe*, 438 N.E.2d at 761 (holding that although plaintiff was injured in a car accident with a drunk driver, the designated evidence revealed that she was "in pain and disabled," which did not "rise to the level of a justifiable finding that [she] was of unsound mind").

[17] In contrast, this Court found a genuine issue of material fact regarding whether the plaintiff was mentally incompetent in *Hayes v. Westminster Village North, Inc.*, 953 N.E.2d 114 (Ind. Ct. App. 2011), *reh'g denied*, *trans. denied*. In *Hayes*, Dorothy Rodarmel lived at Westminster's nursing home from August 22, 2001, until December 3, 2007. On December 3, 2007, Dorothy was transferred from the nursing home to a hospital for emergency treatment. Dorothy remained at the hospital until her death on December 14, 2007. Brian Hayes, as administrator of Dorothy's estate, filed a proposed medical-malpractice complaint with the Indiana Department of Insurance on December 14, 2009. Upon learning from the Department of Insurance that Westminster was not a qualified healthcare provider under the Medical Malpractice Act because it failed to file proof of financial responsibility and pay a required surcharge, Hayes filed a negligence and wrongful-death complaint against Westminster in Marion Superior Court on December 18, 2009. Westminster filed a motion for

summary judgment alleging that Hayes filed the complaint outside the two-year statute of limitations, and the trial court granted summary judgment in favor of Westminster.  On appeal, we explained that Hayes was obligated to file his complaint within two years of the date of Westminster's alleged harm to Dorothy and that December 3, 2007, was the last time Dorothy was in Westminster's care.  *Id.* at 116-17.  Thus, Hayes, at the latest, should have filed suit against Westminster on December 3, 2009.  *Id.* at 117.  But Hayes did not file suit until December 18, 2009.  *Id.*

[18]  Hayes argued that Section 34-11-6-1 operated to extend the statute of limitations because Dorothy was mentally incompetent when she was allegedly harmed by Westminster's negligence and transferred to the hospital for medical treatment.  *Id.*  Specifically, Hayes designated medical records showing the following: (1) Dorothy was diagnosed with senile dementia; (2) when she arrived at the hospital on December 3, Dorothy was unable to provide her medical history or respond to commands; (3) Dorothy exhibited a "[d]ecreased level of consciousness"; (4) a doctor noted that on December 4, Dorothy was "not responsive" and could not provide any medical history; and (5) Dorothy was "aphasic," which is defined as the partial or total loss of the ability to articulate ideas in any form, resulting from brain damage.  *Id.*  Westminster, however, highlighted other entries in Dorothy's medical records that indicated she was sufficiently conscious to respond to medical providers' questions and that she had never been adjudicated mentally incompetent in a legal proceeding.  *Id.*  We found that the "evidence [wa]s sufficient to establish a

material dispute of fact as to whether [Dorothy] was mentally incompetent at the time that she was allegedly harmed by Westminster's negligence and was transferred from Westminster to the hospital for emergency treatment." *Id.*

[19] Consistent with the case law in this area and for the reasons set forth below, we find that the designated evidence in this case does not rise to the level necessary to avoid summary judgment on the issue of whether Whitlock was mentally incompetent, as he alleges, "from April 15, 2011 to sometime well after April 24, 2011."

[20] Steel Dynamics designated evidence that Whitlock had no fractures and no concussion or other brain injury. He also had no deficiency on the Glasgow Coma Scale. Indeed, the only medical treatment that Whitlock received was stitches. Whitlock was "awake," "alert," and "oriented" at both hospitals, and he was able to communicate with his medical providers and sign consent forms. He was not admitted to either hospital and went home the same day with a prescription for Vicodin. He never received any further medical treatment for his injuries.

[21] Whitlock designated affidavits from his wife and mother-in-law. These affidavits address Whitlock's alleged mental incompetence *and* physical limitations. As for Whitlock's physical limitations, the affidavits address the following concerns:

- Whitlock required help to move around
- He slept a lot
- He had headaches and pain

- He got dizzy when standing up
- He had difficulty talking when he first woke up

These allegations, however, do not create a genuine issue of material fact that Whitlock was mentally incompetent.

[22] The affidavits also list specific instances of mental problems. In particular, the affidavits allege:

- Whitlock was forgetful at times
- He dozed off
- He was disoriented when he woke up

Again, because of the nature of these allegations, they are not sufficient to create a genuine issue of material fact that Whitlock was mentally incompetent.

[23] Finally, the affidavits give general opinions without designating objective bases for the opinions. The affidavits in this regard allege:

- Whitlock was disoriented and incoherent, without giving specific instances of how he was disoriented and incoherent[6]
- He did not understand what was going on around him, again without giving specific details
- He did not recognize his mother-in-law "at first," but without specifying when he did recognize her
- He was not "all there"

Since these opinions addressed the central issue of Whitlock's mental competence, greater detail was required. In other words, the affiants— rather than merely setting forth conclusory statements—were required to give specific

---

[6] This allegation is separate from the allegation that Whitlock was disoriented when he woke up.

details which they perceived to be the basis for their conclusions that Whitlock was mentally incompetent. Instead, their opinions were only one step removed from simply saying that Whitlock was mentally incompetent. More is required under Evidence Rule 701.

[24] Because there is no evidence, either individually or collectively, that creates a genuine issue of material fact that Whitlock was mentally incompetent, the trial court did not err in entering summary judgment in favor of Steel Dynamics.

[25] This case is distinguishable from the Indiana Supreme Court's recent opinion in *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014). In *Hughley*, the State filed civil proceedings seeking forfeiture of Hughley's cash and car, alleging that both were proceeds of or were used to facilitate Hughley's drug dealing. The State filed a motion for summary judgment. In response, Hughley submitted an affidavit in which he denied that (1) the cash was connected to his dealing and (2) his car was used to transport drugs. The trial court granted summary judgment in favor of the State for forfeiture of the cash but denied it as to Hughley's car. Hughley appealed the trial court's grant of summary judgment in favor of the State regarding the cash. On appeal, our Supreme Court found that although Hughley's affidavit was "perfunctory" and "self-serving," it nonetheless specifically controverted the State's prima facie case that the cash was proceeds of or used for drug dealing and therefore was sufficient to raise a factual issue to be resolved at trial. *Id.* at 1004.

[26] In contrast to the affidavit in *Hughley*, in which the defendant set forth facts on the ultimate issue, here the facts set out by Whitlock's wife and mother-in-law are not sufficient to establish a genuine issue of material fact that Whitlock was mentally incompetent, and they attempted to give their *opinions* on the ultimate issue, and their opinions are inadmissible. Accordingly, *Hughley* does not control this case.

[27] Because we find that there is no genuine issue of material fact regarding Whitlock's mental competence when the cause of action accrued, we affirm the trial court's grant of summary judgment in favor of Steel Dynamics.

Affirmed.

Friedlander, J., concurs.

May, J., dissents with opinion.

Charles R. Whitlock,

*Appellant-Defendant,*

v.

Steel Dynamics, Inc.,

*Appellee-Plaintiff.*

Court of Appeals Case No.
32A05-1404-CT-189

---

**May, Judge, dissenting.**

[28] "The issue of unsoundness of mind is ordinarily a question for the trier of fact." *Collins v. Dunifon*, 163 Ind. App. 201, 208, 323 N.E.2d 264, 269 (1975). I believe the affidavits from Kristina and Gaultney were sufficient to create such a question of fact for the jury. As that makes summary judgment inappropriate, I must respectfully dissent.

[29] Summary judgment is "not a summary trial." *Hughley v. State*, 15 N.E.3d 1000, 1004 (Ind. 2014). Nor is it "appropriate merely because the non-movant appears unlikely to prevail at trial." *Id.* "In essence, Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* Our job as the appellate court is to

"carefully assess the trial court's decision to ensure that [a nonmovant] was not improperly denied his day in court." *Id.* at 1003.

[30] Thus, we must carefully review a summary judgment *de novo* and decide whether there are any genuine issues of material fact. *Id.* Factual issues are 'genuine' if "a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)). As we determine whether the record contains conflicting facts and inferences, we must view all facts and inferences from the designated evidence in a light favorable to the nonmoving party. *Overton v. Grillo*, 896 N.E.2d 499, 502 (Ind. 2008), *reh'g denied*.

[31] The majority holds the affidavits of Kristina and Gaultney were inadmissible under Evidence Rule 701 because "the affidavits give general opinions without designating objective bases for the opinion." (Slip op. at 15.) I disagree with that characterization of the affidavits and believe the affidavits were admissible.

[32] As for whether there were objective bases for the opinions, Kristina's affidavit explains: "He was disoriented, when he would wake up you would try to talk to him and he would have to think a long time about what he was saying before he said it." (Appellant's App. at 108.) She also indicated "he was not all there, he would change the subject in the middle of what you were talking about and forget what you were talking about and just quit talking." (*Id.* at 109.) Those

were "specific details," (Slip op. at 15-16), to explain how she reached at least two of her "general opinions." (*Id.* at 15.)

[33] The affidavits also included factual assertions about Whitlock's physical and mental limitations following his injury. (*See id.* at 14-15 (listing concerns discussed in affidavits).) After listing those factual assertions, the majority holds they "do not create a genuine issue of material fact" about his mental competence. (*See id.*) Those facts alone may not create a genuine issue of material fact about Whitlock's mental competence, but I would characterize that evidence about his physical and mental limitations as relevant to the opinions given about his mental competence. *See, e.g.*, *Chapman v. Burks*, 183 Ga. App. 103, 106, 357 S.E.2d 832, 836 (1987) ("we do not discount the effect which physical disability may have on mental capacity"), *reh'g denied*. For these reasons, I believe the affidavits were admissible under Evidence Rule 701. *See, e.g.*, *Lesh v. Chandler*, 944 N.E.2d 942, 949 n.5 (Ind. Ct. App. 2011) (declining to expect witnesses under Evid. R. 701 to have the kind of knowledge of standards that would be expected of witnesses presented as experts).

[34] Because I believe the affidavits were admissible, I would hold the evidence therein sufficient to prevent summary judgment as to Whitlock's mental incompetence. If injuries to a person's head and face cause him, for a two-week period, to be awake only when necessary to go to the bathroom and to be too

dizzy to walk alone to that bathroom,[7] I believe there is a genuine issue whether such person could be capable of "managing or procuring the management of his or her ordinary affairs," *Duwe v. Rodgers*, 438 N.E.2d 759, 761 (Ind. Ct. App. 1982), *reh'g denied*, or capable of "understanding the rights that he would otherwise be bound to know, or of managing his affairs, with respect to the institution and maintenance of a claim for relief." *Collins*, 323 N.E.2d at 269.

[35] Thus, I would reverse the summary judgment. *See Chapman*, 357 S.E.2d at 836-37 (plaintiff's affidavit that she was "delirious and unaware" for a few days at home, which made her "unable to communicate intelligently," and during that time, she had hallucinations, "severe pain, and little understanding of what was happening," created genuine issue of fact as to her mental competency to withstand summary judgment on statute of limitations ground). *See also Capan v. Daugherty*, 402 N.W.2d 561, 563-64 (Minn. App. 1987) (assertion that

---

[7] The majority notes we have held "injuries more severe than those sustained by Whitlock . . . did not render the plaintiff incompetent." (Slip op. at 10.) However, Whitlock's circumstances as described in the affidavits by Kristina and Gaultney were nothing like the circumstances faced by the plaintiff, Nancy Hughes, in the case cited by the majority. *Indiana Dept. of Highways v. Hughes*, 575 N.E.2d 676 (Ind. Ct. App. 1991), *trans. denied*. Although Hughes had a "badly broken left lower leg and ankle" that required her to stay in the hospital for two months of treatment, *id.* at 678-79, she was also "mentally alert at virtually all times from the day of the accident forward." *Id*. at 678.

*Hughes* is also distinguishable because Hughes' claim was filed against a state agency and therefore subject to the requirements of the Indiana Tort Claims Act. *Id.* at 677. Under the Tort Claims Act, compliance with the notice provisions "is a procedural precedent which *the plaintiff must prove* and which the trial court must determine *prior to trial*." *Id.* at 678 (emphases added). In contrast, Whitlock had a burden only to "show a material fact that precludes summary judgment." *Hayes v. Westminster Village North, Inc*. 953 N.E.2d 114, 116 (Ind. Ct. App. 2011), *trans. denied*.

someone "is not dealing with a full deck and needs help" creates inference of mental incompetence).

[36]     For all these reasons, I must respectfully dissent.