## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 08 2017, 8:21 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Gregory W. Black
Gregory W. Black, P.C.
Plainfield, Indiana

ATTORNEY FOR APPELLEE

Graham T. Youngs
Steuerwald, Hannon & Witham, LLP
Danville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bradley K. Buchanan,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Tina Fox,<br>*Appellee-Defendant* | August 8, 2017<br><br>Court of Appeals Case No.<br>67A01-1704-PL-861<br><br>Appeal from the Putnam Circuit Court<br><br>The Honorable Joseph D. Trout, Special Judge<br><br>Trial Court Cause No.<br>67C01-1208-PL-332 |

**Najam, Judge.**

## Statement of the Case

[1] Bradley K. Buchanan appeals the trial court's grant of Tina Fox's motion for summary judgment on Buchanan's complaint, in which Buchanan had alleged

malicious prosecution, abuse of process, and intentional infliction of emotional distress, among other theories of liability. Buchanan presents several issues for our review, but we address two dispositive issues:

1. Whether the trial court abused its discretion when it struck portions of his affidavit.

2. Whether the trial court erred when it entered summary judgment in favor of Fox.

We affirm.

## Facts and Procedural History

From approximately October 2004 until December 2007, Fox and Buchanan lived together in Greencastle and were engaged in a romantic relationship. In October 2008, Sargent Scott Stockton with the Indiana State Police White Collar Crime Section ("WCCS") began investigating alleged insurance fraud by Buchanan, an insurance broker with Buck Insurance. In the course of that investigation, Sargent Stockton contacted Fox and questioned her about the alleged insurance fraud.[1] In addition, Sargent Stockton asked Fox whether she had "any knowledge about Mr. Buchanan possessing what might be stolen or illegal firearms." Appellant's App. Vol. 3 at 152. In response to "the questions about firearms," Fox "reported to Sargent Stockton that on one occasion Mr.

---

[1] Our review of the record indicates that Fox may have worked in Buchanan's office while they were living together.

Buchanan had commented that he believed that two handguns he had just purchased might well be 'hot' because he was able to buy them so cheaply." *Id.* Fox "had no knowledge one way or another whether Mr. Buchanan was correct and [she] never told anyone that Mr. Buchanan did own or did possess stolen or illegal firearms." *Id.* at 153.

[4] In mid-2009, Detective Brent Gulinson, also with the WCCS, took over the investigation from Sargent Stockton. Detective Gulinson contacted Fox, and she told him what she had told Sargent Stockton about Buchanan's alleged insurance fraud and possession of possibly stolen firearms. On November 12, 2009, Detective Brent Gulinson submitted an affidavit of probable cause for a search warrant for Buchanan's residence and alleged in relevant part that Buchanan possessed "stolen guns and ammunition as well as evidence of [sic] related to insurance fraud and theft[.]" Appellant's App. Vol. 2 at 63. Detective Gulinson stated that a "source of information" ("SOI") who had lived with Buchanan from October 2004 until December 2007 had reported that "on or about 2006" Buchanan bought two small handguns for $100 and stated to the SOI "'I know these are stolen' or some similar statement indicating that the weapons" were stolen. *Id.* at 64. Also on November 12, 2009, Detective Gulinson filed a second affidavit for probable cause requesting an arrest warrant based solely on the insurance fraud allegations against Buchanan. And the State charged Buchanan with corrupt business influence, as a Class C felony, and four counts of felony theft. A trial court issued both warrants.

[5] On November 13, Indiana State Police officers executed the warrants at Buchanan's residence. Officers arrested Buchanan and, in the course of the search of his residence, they recovered "miscellaneous documents" and "firearms," including approximately ten handguns, twelve shotguns, and multiple rifles. Appellant's App. Vol. 3 at 183. On November 29, 2010, Buchanan pleaded guilty to one count of theft, as a Class D felony, based on one of the insurance fraud allegations.

[6] On November 11, 2011, Buchanan filed a complaint for damages against multiple defendants including Fox, the State, the Indiana Department of Insurance, and the Putnam County Sheriff's Department. Buchanan alleged multiple torts and "breach of contract" against the various defendants stemming from his arrest on November 13, 2009, during which he was allegedly "bound physically" with "police weapons . . . placed against his head and body in a rude and insolent manner." Appellant's App. Vol. 2 at 47. Buchanan alleged in part that he "was made to feel physical pain, discomfort, as well as emotional pain and suffering" as a result of "the ordeal of the search and apprehension" by law enforcement officers." *Id.* With regard to Fox in particular, Buchanan alleged:

> The allegations as to firearms was a material contributing factor that led to the search warrant, search of Mr. Buchanan's home and his arrest, for suspected wrongdoing as to firearms, and to the seizure and retention of such firearms, to this day, by state police. . . .

* * *

Apparently no charges were preferred or brought against Mr. Buchanan related to the firearms, in any manner. . . .

Allegations of Ms. Fox as to the firearms were a proximate cause and contributing or direct cause of the damages Mr. Buchanan has suffered at bar.

Mr. Buchanan pleaded guilty to felony charges [related to insurance fraud] and is on probation as part of his sentence pursuant to such plea.

\* \* \*

The plea is unrelated to the firearms.  The allegations as to firearms remain false, malicious, permanently so, producing damage continuously.

*Id.* at 48.  On March 28, Buchanan filed an amended complaint to add additional plaintiffs and additional claims that pertained to defendants other than Fox.

[7]  On November 4, 2016, Fox filed a summary judgment motion and a memorandum and designated evidence in support of summary judgment.  On January 9, 2017, Buchanan filed a response and designated evidence in opposition to summary judgment, including an affidavit.  Fox filed a response and moved to strike portions of Buchanan's designated evidence, including portions of his affidavit.  The trial court granted Fox's motion to strike in part and granted her summary judgment motion.  Buchanan filed a motion to correct error, which the trial court denied.  This appeal ensued.

# Discussion and Decision

## *Issue One: Affidavit*

[8] Buchanan first contends that the trial court abused its discretion when it struck portions of his affidavit designated in opposition to summary judgment. Fox had moved the trial court to strike portions of Buchanan's affidavit because she alleged that they constituted "improper affidavit testimony" under Trial Rule 56(E).[2] Appellant's App. Vol. 4 at 65. For example, Fox moved to strike Buchanan's opinions with regard to Fox's motives in telling Sargent Stockton that Buchanan thought that two handguns he had purchased might have been stolen. The trial court granted the motion to strike the following excerpts from Buchanan's affidavit:

- "with malice ulterior purpose [sic]"

- "Motives of Ms. Fox were revenge, malice, harm"

- "She did so not for justice, but for revenge"

- "Judge Smith did not believe the awful things she said about me. Her dishonesty in that case carried over into other situations"

- "Yet Tina accuses me of wrongdoing"

---

[2] Fox also moved to strike portions of other evidence Buchanan had designated in opposition to summary judgment, but Buchanan does not appeal the trial court's ruling with respect to those matters.

- "I found out on & after my arrest in November 2009 Tina had told police I was a thief or participant of theft of firearms. Thus the police considered me dangerous"

- "unlike the normal white collar criminal"

- "The manner of Tina's lies about firearms to police has contributed to my emotional damage, trauma"

- "[Tina's] lies about the firearms"

- "Her lies caused my father deprivation of his firearms the rest of his life, me deprivation until 2016, from late 2009 until summer 2016, nearly seven years"

- "Tina meant to harm me, far exceeding any privilege she had to discuss me with government officials. She had no reason to discuss me with government officials and knew that. Her friendship with Patty Buchanan led her to lie about me."

- "Tina Fox is guilty of false reporting. She did so out of hatred."

- "She says the police asked her whether I had stolen firearms. She is the only person who could have raised stolen firearms as an issue. No one else ever has done so, no other person I've ever lived with has done so."

Appellant's App. Vol. 2 at 39-41.

[A] trial court has broad discretion in ruling on the admissibility of evidence. *Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 886 (Ind. Ct. App. 2002). This discretion extends to rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules. *Id.*

Indiana Trial Rule 56(E) provides in relevant part that affidavits submitted in support of or in opposition to a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Further, "[s]worn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *Id.* "The requirements of T.R. 56(E) are mandatory—therefore, a court considering a motion for summary judgment should disregard inadmissible information contained in supporting or opposing affidavits." *Interstate Auction, Inc. v. Cent. Nat'l Ins. Group, Inc.*, 448 N.E.2d 1094, 1101 (Ind. Ct. App. 1983).

*Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005).

[9]     Further,

[a]ffidavits must comply with Indiana Evidence Rule 701, which provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception; and
>
> (b) helpful to a clear understanding of the witness's testimony or to a determination of a fact in issue.

The witness must set forth enough facts to allow the trial court to find, pursuant to Evidence Rule 104(a), that the opinion is rationally based on the witness's personal perceptions. *Ackles v. Hartford Underwriters Ins. Corp.*, 699 N.E.2d 740, 743 (Ind. Ct. App. 1998), *trans. denied*; 13 Robert Lowell Miller, Jr., Indiana Practice § 701.103 (3d ed. 2007). The witness need not identify all of the perceived facts on which the opinion is based, 13

Robert Lowell Miller, Jr., at § 701.103; rather, the witness must merely provide a basis sufficient for the judge to determine that the opinion is rationally based on the perceptions of the witness. *When a witness has not identified the objective bases for her opinion, the proffered opinion obviously fails to meet the requirements of Evidence Rule 701 because (1) there is no way for the court to assess whether it is rationally based on the witness's perceptions and (2) the opinion does not help the factfinder but only tells it in conclusory fashion what it should find.* Ackles, 699 N.E.2d at 743; *see also Paramo v. Edwards*, 563 N.E.2d 595, 600 (Ind. 1990) ("Conclusory statements not admissible at trial should be disregarded when determining whether to grant or deny a summary judgment motion."). The extent of the requisite detail varies from case to case, and lies within the trial court's discretion. *Ackles*, 699 N.E.2d at 743; 13 Robert Lowell Miller, Jr., at § 701.103. Courts require greater detail as the subject of the opinion draws nearer to a central issue in the case. 13 Robert Lowell Miller, Jr., at § 701.103.

*Whitlock v. Steel Dynamics, Inc.*, 35 N.E.3d 265, 269 (Ind. Ct. App. 2015) (emphasis added), *trans. denied*.

[10] Buchanan's argument on appeal is difficult to discern. In essence, Buchanan maintains that the stricken statements are admissible because they "are based on what any reasonable person would sense, conclude, from his own . . . rational perception under the circumstances [and] his familiarity with the topics reasonably inferred[.]" Appellant's Br. at 23. He asserts that his personal knowledge of Fox's motives are "readily inferred" and that he is permitted to testify about Fox's state of mind. *Id.* at 21. Buchanan also states that his "romance" with Fox is the "foundation" for his statements. *Id.* at 22.

But Buchanan has not identified the objective bases, the factual predicates, either for his opinion regarding Fox's motives and veracity or for his statements regarding Judge Smith's opinion of Fox and how a "normal" white collar criminal would be treated. Thus, the stricken portions of Buchanan's affidavit are inadmissible opinions and conclusory statements. *See Whitlock*, 35 N.E.3d at 269. We hold that the trial court did not abuse its discretion when it struck portions of Buchanan's affidavit.

### Issue Two: Summary Judgment

Buchanan contends that the trial court erred when it entered summary judgment in favor of Fox.[3] Our standard of review is clear. "We first observe that a trial court's order granting summary judgment comes to us 'cloaked with a presumption of validity.'" *DiMaggio v. Rosario*, 52 N.E.2d 896, 903 (Ind. Ct. App. 2016) (internal citations omitted). Further,

> [w]e review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the

---

[3] The trial court entered judgment in favor of Fox under Trial Rule 54(B) and stated that "no just reason for delay of entry of Final Judgment exists." Appellant's App. Vol. 2 at 35.

undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate [ ] the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (alterations original to *Hughley*). However, we will affirm the "trial court's entry of summary judgment if it can be sustained on any theory or basis in the record." *DiMaggio*, 52 N.E.3d at 904.

[13] We emphasize that summary judgment is a "high bar" for the moving party to clear in Indiana. *Hughley*, 15 N.E.3d at 1004. "In particular, while federal practice permits the moving party to merely show that the party carrying the burden of proof [at trial] lacks evidence on a necessary element, we impose a more onerous burden: to affirmatively 'negate an opponent's claim.'" *Id.* at 1003 (quoting *Jarboe v. Landmark Comm. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994)).

[14] In his complaint, Buchanan alleged, in essence, that Fox was liable under the following theories: malicious prosecution, abuse of process, and intentional infliction of emotional distress. The trial court entered summary judgment in favor of Fox on all counts, but Buchanan appeals the entry of summary judgment only with respect to the malicious prosecution and abuse of process counts.[4] The elements of a malicious prosecution action are: (1) the defendant instituted or caused to be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3) the defendant had no probable cause to institute the action; and (4) the original action was terminated in the plaintiff's favor. *Estate of Mayer v. Lax, Inc.*, 998 N.E.2d 238, 249-50 (Ind. Ct. App. 2013), *trans. denied*. An abuse of process claim requires a showing that a defendant had: (1) an ulterior purpose or motives; and (2) a willful act in the use of process not proper in the regular conduct of a proceeding. *Id.* at 250.

[15] In her summary judgment motion, Fox contended in relevant part that she was entitled to summary judgment on all counts, including Buchanan's allegations of malicious prosecution and abuse of process, under the qualified privilege doctrine, which "protects 'communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty.'" *Kelley v.*

---

[4] To the extent Buchanan contends that the trial court did not rule on his claim of intentional infliction of emotional distress, that claim is without merit.

*Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992). As our Supreme Court has explained, "communications to law enforcement officers are protected by this qualified privilege" in order to "'enhance[] public safety by facilitating the investigation of suspected criminal activity.'" *Id.* (quoting *Holcomb v. Walter's Dimmick Petroleum, Inc.*, 858 N.E.2d 103, 108 (Ind. 2006), *abrogated on other grounds*). In the absence of a factual dispute, the applicability of this "public interest privilege" is a question of law to be determined by the court. *Id.* Our courts have applied the qualified privilege doctrine to claims of malicious prosecution and abuse of process. *See Brown v. Indpls. Housing Agency*, 971 N.E.2d 181, 186 (Ind. Ct. App. 2012) (malicious prosecution); *Holcomb*, 858 N.E.2d at 107 (abuse of process).

[16] In support of her summary judgment motion, Fox designated evidence showing that Sargent Stockton had contacted her to ask her questions about Buchanan's alleged insurance fraud and, in the course of their conversations, Sargent Stockton had asked Fox whether she had "any knowledge about Mr. Buchanan possessing what might be stolen or illegal firearms." Appellant's App. Vol. 3 at 152. In response to "the questions about firearms," Fox "reported to Sargent Stockton that on one occasion Mr. Buchanan had commented that he believed that two handguns he had just purchased might well be 'hot' because he was able to buy them so cheaply." *Id.* Fox designated evidence showing that she "had no knowledge one way or another whether Mr. Buchanan was correct and

[she] never told anyone that Mr. Buchanan did own or did possess stolen or illegal firearms." *Id.* at 153.

[17] On appeal, Buchanan concedes that Fox "had a duty to report" and "Trooper Gulinson had a duty to listen." Appellant's Br. at 30. Thus, Buchanan does not challenge the applicability of the qualified privilege asserted by Fox. Still, as he correctly points out, "the privilege is not without limits: a statement 'may lose its privileged character upon a showing of abuse wherein: (1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth.'" *Bah v. Mac's Convenience Stores, LLC*, 37 N.E.3d 539, 548 (Ind. Ct. App. 2015) (quoting *Bals*, 600 N.E.2d at 1356), *trans. denied*. And Buchanan maintains that Fox lost the privilege because, when she made the statements about his possible unlawful possession of firearms, she was "motiv[at]ed primarily by ill will" and made the statements "without belief or without grounds for belief in truth." Appellant's Br. at 30.

[18] But Buchanan does not direct us to designated evidence, other than the stricken portions of his affidavit, in support of his contentions on this issue. Without any such evidence, Buchanan has not met his burden to establish a genuine issue of material fact to preclude summary judgment on the qualified privilege issue. *See, e.g.*, *Kelley*, 865 N.E.2d at 602 (holding summary judgment on defamation claim appropriate because plaintiff did not designate evidence to establish a genuine issue of material fact to show that defendant had abused the

privilege). The trial court did not err when it entered summary judgment for Fox.[5]

[19] Affirmed.

Kirsch, J., and Brown, J., concur.

---

[5] We note that, as Fox correctly points out, Buchanan's allegation of malicious prosecution also fails as a matter of law because Fox "did not institute or cause to be instituted the criminal action against [Buchanan]; the prosecutor did." *Bah*, 37 N.E.3d at 547. And Fox designated evidence showing that Buchanan's abuse of process claim was barred by the applicable two-year statute of limitations. *See Yoost v. Zalcberg*, 925 N.E.2d 763, 771 (Ind. Ct. App. 2010), *trans. denied*.